AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>**Elan Efraim MOSHE**<br><br>*Defendant(s)* | Case No. 2:21-mj-0104 CKD |

**FILED**
Jun 25, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 31, 2020__ in the county of __Placer__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1) | Possession with Intent to Distribute LSD |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.

Date: June 25, 2021 at 3:32 pm

*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT, ARREST WARRANT, AND CRIMINAL COMPLAINT

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state as follows:

## Background and Expertise

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004.

2. I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the Drug Enforcement Administration (DEA). In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia. In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

3. I have assisted in the execution of more than four hundred (400) warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal drug narcotics statutes. As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles utilized by traffickers in their efforts to import, conceal, manufacture and distribute controlled substances. Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain. I have been actively involved as case agent in excess of two hundred (200) investigations and have talked with confidential informants involved in the trafficking of narcotics, and this has formed the basis of my opinions.

4. I have been qualified as and have testified as an expert witness in both federal and state court in the Northern and Eastern Districts of California and in counties including Alameda, Contra Costa, Solano, Sacramento and others. These areas of qualification have included possession for sale, possession with intent to distribute, manufacturing of a controlled substance and cultivation.

## Scope of Requested Criminal Complaint, Arrest Warrant, and Search Warrant

5. This Affidavit is submitted in support of a Criminal Complaint and Arrest Warrant charging **Elan Efraim MOSHE** with possession with intent to distribute Lysergic Acid Diethylamide (LSD), a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).

6. This Affidavit is also submitted in support of a search warrant to search the following locations:

    A. The person of Elan Efraim MOSHE;

    B. A green IPhone 11 Pro Max with call number (510)388-7026;

    C. The white 2019 ACURA MDX, CALIFORNIA LICENSE #8HSH975;

    D. Nevada County Parcels corresponding to APN#034-030-022 (13.9 acres), APN#034-030-026 (15.5 acres) and APN#034-030-027 (15.4 acres), including all structures on those properties.

7. I believe that MOSHE is a large-scale LSD, MDMA and Marijuana trafficker currently operating within the Eastern District of California of California and elsewhere. Based upon the ongoing federal investigation detailed below, I believe that MOSHE has been distributing large amounts of LSD, MDMA and Marijuana in the Eastern District of California and elsewhere since at least late 2018 to the present and that he has supplied these substances to individuals as detailed below. This Affidavit therefore requests authority to search the locations described in Attachment A in order to locate and seize the items described in Attachment B as evidence and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (distribution or and possession with intent to distribute LSD, MDMA, and Marijuana), and 21 U.S.C. §§ 846 and 841(a)(1) (conspiracy to distribute and possess with intent to distribute LSD, MDMA and Marijuana).

## I. PROBABLE CAUSE

### *Identification of Elan MOSHE as source of supply for large amounts of LSD seized in the Eastern and Northern Districts of California in 2018 and 2019*

8. Over the last several years, I conducted an investigation of the LSD and MDMA trafficking activities of a Drug Trafficking Organization (DTO) based in the Eastern District of California. During the course of this investigation, and while acting in an undercover capacity, I purchased multiple 1000-count quantities of LSD and multiple ounce quantities of MDMA from multiple members of this DTO. In 2018, I arrested a particular member of this group and seized multiple 1000-count quantities of LSD (in excess of 10,000 dosage units) as well as large amounts of other drugs. This particular individual, hereinafter referred to Source of Information #1 (SOI#1),

identified the source of supply for the seized LSD. SOI#1 related that an individual located in the Northern District of California had supplied this person with gram quantities of crystalline LSD, for which SOI#1 had paid approximately $10,000.00 each, and which SOI#1 had converted into 10,000 dosage units per gram using a carrier medium.

9. I subsequently served search warrants in the Northern District of California in 2019 at the locations controlled by the person SOI#1 had identified as the source for the crystalline LSD. At these locations, I located between 50,000-100,000 dosage units of LSD to include multiple gram quantities of crystalline LSD and multiple 10,000 count quantities of carrier medium LSD. I arrested the identified source of supply and this person agreed to identify his/her source for the LSD that had been seized. This person, hereinafter referred to as SOI#2, related that he/she had been supplied with the LSD by an individual named Elan, subsequently identified as Elan MOSHE, who lived in Oakland, California. SOI#2 related that MOSHE had provided him/her with multiple grams of crystalline LSD (each gram equating to a minimum of 10,000 dosage units of LSD for distribution in various carrier mediums, *e.g.* liquid, blotter paper, gel tabs, micro-dots) for slightly less than $10,000 per gram.

10. SOI#2 described MOSHE and pointed out MOSHE's phone number saved in the memory of SOI#2's telephone as "ELAN." This telephone number (510-561-4382) was found to be a pre-paid no-name AT&T cellular telephone. Upon examining the tolls from this number provided by AT&T, the highest-frequently contacted number was a cellular telephone subscribed to Victoria AIVZACHIVIL at 1540 Jackson Street, #307, Oakland, California. Inquiries with multiple databases, to include Thomas and Reuters Clear, revealed that Elan MOSHE (DOB: \*\*/\*\*/1977) had regularly self-provided a resident address of 1540 Jackson Street, #307, Oakland, California in recent years, including as a resident address to the California Department of Motor Vehicles (DMV) most recently.

11. I have reviewed MOSHE's NCIC criminal history and note that it includes: an arrest in 1996 in Santa Clara County, California for Transportation/Sales of a Controlled Substance resulting in a felony conviction on 03-06-1996 for Possession of a Controlled Substance and an arrest on 12-10-1999 in Santa Clara County, California for Possession of a Controlled Substance for Sale, Possession of Marijuana for Sale, Possession of a Controlled Substance, Evading a Police Officer and Being Under the Influence of a Controlled Substance, resulting in convictions in 2000 for Evading a Police Officer and possessing a Controlled Substance. MOSHE also has multiple subsequent DUI, Driving on a Suspended License and similar misdemeanor arrests and convictions.

### *MOSHE linked to site of large LSD Seizure in Santa Cruz in May 2019*

12. I learned during the course of this ongoing investigation that following the above events, on May 7, 2019, Matthew HUTCHINGS was arrested at the time of the execution of a state search warrant at his residence in Soquel, California (Santa Cruz

County) and that law enforcement officers seized a large amount of LSD and MDMA, approximately 33 pounds of Psilocybin Mushrooms, and multiple firearms.

13. I contacted Detective Robert Locke-Paddon of the University of California Santa Cruz Police Department (UCSD PD) who was the case agent with regards to the investigation of HUTCHINGS. Detective Locke-Paddon related to me that he had learned that HUTCHINGS was distributing large amounts of various drugs to students at the University and that as a result of the search warrant, he had seized several 1000-count quantities of **gelatin tab LSD** (believed to be between 5,000 and 10,000 dosage units of this type of carrier medium) of various colors, **including green**, from HUTCHINGS residence and storage locker.

14. Detective Locke-Paddon provided me with photographs of the results from the search warrant including this LSD, and I noted that it was unique in size, shape, and color. I examined these photographs and noted that while searching HUTCHING's residence, specifically in a room in which LSD and Psilocybin Mushrooms were located, Officers located and photographed a Wells Fargo Visa Platinum Debit in the name of **Elan MOSHE**. HUTCHINGS was charged federally in June 2019 in the Northern District of California with Possession of LSD with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), entered a guilty plea. I was informed that HUTCHINGS was sentenced to 10 years prison in April of 2021 in the Northern District of California.

***Moshe arrested in Placer County in March 2020 in possession of over 1,300 Dosage Units of Suspected LSD while in a vehicle registered to him***

15. I learned that Elan MOSHE was arrested on state charges in Placer County (California) on March 31, 2020 for Possession of LSD, MDMA and Psilocybin Mushrooms for Sale and Transportation/Sales of Controlled Substances. I obtained Rocklin Police Department Report of Investigation regarding MOSHE's arrest, which I reviewed, and I spoke to Placer Special Investigations Unit (SIU) Task Force Detective Josh Shemenski who prepared this report and conducted the below described investigation. I learned the following.

16. On March 31, 2020, Placer County Deputy Marian Baker was dispatched on a medical aid call in an unincorporated area of Placer County, specifically the intersection of Florence Lane and Florence Court north of Auburn, California. This medical aid was for a male subject down in the roadway. Deputy Baker arrived on scene to find Cal Fire firefighters and an American Medical Response (AMR) ambulance crew tending to a male subject later identified as Elan MOSHE. Paramedics and law enforcement asked what his name was, and MOSHE was not responsive. MOSHE was transported to Sutter Roseville Medical Center (SRMC) for medical treatment, and his vehicle was left on scene at the intersection. The vehicle was a black 2019 Honda Ridgeway, California license plate #77828S2. California Department of Motor Vehicles (DMV) records indicate this vehicle is registered to Victoria AIVAZACHVILI and Elan MOSHE at 1540 Jackson Street, #307, Oakland, California.

4

17. Deputy Baker observed a black and white backpack that was laying against the vehicle. Inside of this backpack Deputy Baker located a wallet containing $646 dollars cash, MOSHE's driver's license, one ounce (29 grams) of suspected MDMA, approximately 1302 dosage units total of suspected gel tab LSD, and 148 gross grams of suspected Psilocybin Mushrooms. Deputy Baker then contacted Detective Shemenski who responded to the scene and used a hand-held mass spectrometer (TruNarc Laser field tester) that indicated that the substance in the bag tested presumptive positive for MDMA. Detective Shemenski took possession of these items. He also took possession of an Apple I-Phone 11 Pro, serial #FK1ZH09HN70M, cellular telephone #510-388-7026, which was inside the center console of the vehicle.

18. Detective Shemenski contacted MOSHE later that same day at the SRMC where he was being treated. MOSHE spoke with the Detective and related that he lived in Oakland and was self-employed. MOSHE related that he had traveled the previous day (03-30-2020) to the residence of a business acquaintance in Auburn at which time he had "partied" with the people at this residence and had ingested alcohol, ketamine and cocaine and had passed out. MOSHE stated one of the people at the residence had wanted him to leave early and that he did not remember how, but he had ended up in the passenger seat of his truck and this person had driven him off the property and left him in his vehicle at the intersection of Florence Lane and Florence Court where he was found later that morning by a concerned citizen who had called the paramedics. MOSHE said his cellphone and keys should be in his vehicle and that he was unclear as to whether he had been assaulted or not.

19. MOSHE told Detective Shemenski that he had about one ounce of MDMA, some Psilocybin and Ketamine, and about 2,000 dosage units of LSD. MOSHE related that he obtained high quality MDMA from his connection for $1000 per ounce. MOSHE identified the Apple I-Phone 11 Pro as his telephone and stated that his MOSHE stated that the cellphone number was **510-388-7026.**

20. Detective Shemenski asked MOSHE for permission to search his phone. MOSHE agreed and unlocked the phone. Det. Shemesnki subsequently reviewed and photographed text messages from the phone related to narcotics trafficking. Shortly afterwards, MOSHE purported to revoke his consent, and Det. Shemenski locked the telephone per MOSHE's request.

21. I examined the photographs of the approximately one-thousand three hundred and two (1,302) dosage units of LSD seized from MOSHE on 03-31-2020. I noted that it appeared similar if not identical to the unique, opaque green LSD gel tabs seized from HUTCHINGS in Soquel, California in 2019 during the search warrant wherein MOSHE's Wells Fargo Visa Platinum Debit Card was also located. I also noted that a similar Wells Fargo Debit Card was seized from MOSHE's wallet on 03-31-2020 by Det. Shemenski.

5

22. In March 2021, I subsequently took possession of the suspected LSD seized from MOSHE for submission to the DEA Western Regional Laboratory for analysis. In addition to the thousand-plus dosage units of green gelatin tab LSD described above, I was provided with a vial containing liquid and several pieces of apparent blotter paper also located in the same backpack which had contained the gelatin LSD. I submitted all these items to the DEA Western Regional Laboratory for analysis. In May of 2021 I was informed that the vial contained 2.272 grams of liquid LSD (2.2ml) and the blotter paper was also analyzed and being LSD. The gelatin tabs have yet to be analyzed.

***Moshe is continuing to use the cellphone with call number 510-388-7026 to contact individuals with known drug histories, including individuals identified as interstate LSD traffickers; Drug related texts located on his seized phone***

23. I obtained subscriber and toll information from Verizon for **510-388-7026** and determined that this account was activated in the name of Elan MOSHE with an address of 1540 Jackson Street, Oakland, California on 02-18-2019. I learned that a new device was activated on this account with this same phone number on 04-15-2020 (two weeks after the above seizure of the original phone on 03-31-2020) and that this number was transferred to a green I-Phone 11 Pro Max, IMSI #311480547981608, IMEI #352841110691319 and Device ID#89148000005614853695. I learned that this device and phone number were still active as of late February 2021.

24. I contacted the Placer County Pre-Trial Supervision Unit responsible for pre-trial contact with MOSHE. I learned that MOSHE was still providing a contact number of 510-388-7026. I also learned that while MOSHE still provided an address of 1540 Jackson Street, #307, Oakland, California, he also claimed to be concurrently residing at a house he was renovating in Placerville, California and that he traveled extensively. I noted that MOSHE had also previously provided multiple resident addresses in El Dorado County, California.

25. I examined the tolls for MOSHE's telephone for the period between January 18, 2021 and February 17, 2021. I specifically focused on the top five highest-frequently contacted numbers by this telephone for this period. I noted that just as with the tolls for the telephone number for MOSHE previously provided by SOI#2 in 2019, the number for Victoria AIVAZACHVILI was among the highest-frequently contacted numbers (fifth).

26. I subsequently examined the tolls for MOSHE's telephone and learned that some of the highest-frequently contacted numbers were subscribed in false subscriber names and addresses, although they had been provided as contact numbers for individuals with significant criminal drug histories, including persons identified in prior investigations as trafficking in LSD. This led me to believe that MOSHE was still using cellular telephone 510-388-7026 to continue to conduct his LSD trafficking activities.

27. On March 23, 2021, the Honorable Magistrate Judge Kendall J. Newman authorized a search warrant for MOSHE's Apple I-Phone Pro, cellular telephone number 510-388-7026, which had been seized at the time of his 03-30-2020 arrest. In April 2021, the FBI Forensic Examination Unit extracted data from this phone, to include text messages and information in the phone memory book. I also physically examined the contents of the telephone. I noted numerous drug-related text messages in both SMS/MMS format as well as through multiple messaging apps to include Signal and Telegram. I observed numerous communications between MOSHE and various individuals in the time leading up to his arrest in 2020 over this telephone. In these discussions, other individuals requested "sheets" from MOSHE in quantities up to twenty "sheets." Based on my training and experience, "sheets" is common slang for a 100-dosage unit amount of LSD. MOSHE also discussed having shipped approximately 1000 dosage units of LSD to a particular customer in Arizona. It was also clear from these various communications stored in the phone that MOSHE was actively engaged in operating marijuana cultivation and distribution operations and that he was manufacturing Butane Honey Oil (BHO), a form of THC extracted from Marijuana utilizing a solvent, most commonly Butane. There were numerous MMS text messages in the phone displaying what I know in my training and experience to be BHO manufacturing materials, including flasks, evaporators, liquids, etc.

### GPS Phone Locator information appears to show MOSHE residing at rural Nevada County Property; MOSHE purchases a new 2019 ACURA MDX, CALIFORNIA LICENSE #8HSH975

28. On March 23, 2021, the Honorable Judge Kendall J. Newman also authorized a search warrant for GPS location information for MOSHE's current cellular telephone (still using number 510-388-7026), which was implemented the following week by Verizon. I examined the locator information for this telephone in April 2021. I noted that the range and/or reliability provided by Verizon for the GPS pings showed that the locator information was not precise, *i.e.*, it ranged from a circumference of 200 meters to 2000 meters at any given time. Despite this, I learned that the telephone on several occasions was located in the exact proximity of the apartment complex at 1540 Jackson Street in Oakland, California which was the listed DMV address for MOSHE and his girlfriend, Victoria AIVAZACHVILI. This is also the exact same location where MOSHE and AIVAZACHVILI's only registered vehicle at the time, the 2019 Honda Ridgeway, California license plate #77828S2, was registered per current DMV records.

29. The GPS pings for this telephone showed that despite MOSHE claiming to Placer County Probation and Pretrial Services that he was living full time in Oakland, the vast majority of the time MOSHE's telephone was located in a very rural portion of Nevada County just north and east of Nevada City, California. At those times, the phone locator information had a variance of several thousand meters making it very difficult to pin-point an exact location where he was staying. I also noted that when the telephone was determined to actually be in the towns of Grass Valley and Nevada

7

City, and when the location information appeared to be much more precise, it was regularly located at the site of businesses associated with outdoor growing supply businesses, *i.e.*, businesses that supplied growing mediums, growing supplements and nutrients, etc., which led me to believe that MOSHE was most likely operating an indoor or outdoor marijuana grow at the rural property he appeared to be spending the majority of his time.

30. On June 10, 2021, I traveled to the Placer County Justice Center where the Placer County Probation Department is located in Roseville, California. I had learned from Detective Shemanski that MOSHE had been instructed by the Placer County Probation and Pre-Trial Supervision Department to report to that location on that date and time to comply with a urine test that was part of MOSHE's pre-trial release terms and agreement ordered by the court. I subsequently observed MOSHE arrive at the Justice Center driving an Acura SUV that was clearly marked as a "COURTESY VEHICLE" from the Niello Acura Dealership in Roseville, California. I subsequently traveled to the Niello Acura Dealership and spoke with a manager at that location. I was informed that on June 3, 2021, MOSHE had purchased A WHITE 2019 ACURA MDX, CALIFORNIA LICENSE #8HSH975 at the dealership for approximately $58,000.00 and that he had traded in his 2019 Honda Ridgeline in addition to providing $9000.00 cash. I was provided with paperwork to support this. I was also informed that the vehicle was at the dealership having a part installed and that MOSHE was due to come back in the courtesy vehicle and retrieve his newly-purchased vehicle shortly. I subsequently observed MOSHE arrive back at the dealership, return the courtesy vehicle and depart in the A WHITE 2019 ACURA MDX, CALIFORNIA LICENSE #8HSH975.

31. I noted that from my training and experience that drug traffickers are often aware of the Suspicious Activity Reporting (SAR) requirement that mandates reporting of financial transactions above $10,000, and I routinely encounter drug traffickers who make round-number transactions (deposits, withdrawals, payments) in $9000.00 cash increments. Additionally, I am not aware of any legitimate employment that MOSHE currently or previously had which would explain the purchase of a $58,000 vehicle or the origin of $9000.00 cash, further leading me to believe that he is continuing to traffic in drugs.

    **MOSHE, his vehicle, and large-scale marijuana grow observed at a rural multi-acre parcel in Nevada County**

32. On June 17, 2021, at 5:15 p.m., I observed an individual I believed to be MOSHE driving MOSHE's white 2019 Acura MDX north on Rector Road in a rural area north of Nevada City. This is the same general area where the GPS phone locator information for MOSHE's telephone had showed it regularly located in April 2021. At this time, I attempted to follow this vehicle as it traveled north on this road but it disappeared from my view in the area where Rector Road turns west and splits at the intersection of Kuntz Court. I continued on Rector Road and did not observe the vehicle. I believe that the vehicle traveled onto Kuntz Court which was why it was no

longer visible on Rector Road. I examined the available maps for Kuntz Court and observed that this road went north and appeared to transition from a paved road to a dirt road and dead-ended in a rural area with no apparent residential structures.

33. I examined the property records for the area where Kuntz Court dead-ended and I learned that this area corresponded with three contiguous parcels listed as Nevada County Parcels corresponding to APN#034-030-022 (listed as "vacant land," 13.9 acres with a corresponding address of 20866 Kuntz Court), APN#034-030-026 (listed as vacant land, 15.5 acres with a corresponding address of 21345 Kuntz Court) and APN#034-030-027 (listed as vacant land, 15.4 acres with a corresponding address of 21254 Kuntz Court). Property records indicated that all three parcels were listed as owned by the Trustees of the Estate of Robert J Kuntz and Joan M Kuntz, and had been for over 20 years. Property records indicated that there were no listed residential structures or improvements to these contiguous parcels and that they were simply described as rural vacant land. I also noted per multiple database inquiries, including Thomas and Reuters CLEAR, nobody had been listed as providing the corresponding numerical addresses as residence addresses, *i.e.*, no one on record had ever provided 20866, 21345 or 21254 Kuntz Court, Nevada City, California as a residential address to any organization, business or facility, further leading me to believe these were completely rural properties with no actual fixed residential structures and that this location was "vacant land" as listed on the property records.

34. On July 23, 2021, at my request, the California Highway Patrol (CHP) Auburn Airwing conducted aerial surveillance of the area at the apparent dead-end of Kuntz Court in rural Nevada County corresponding to contiguous Nevada County Parcels APN#034-030-022, APN#034-030-026 and APN#034-030-027. During these overflights, officers observed and recorded what appears to be an extensive apparent outdoor marijuana growing operation on these parcels. They took video and photos of this location, which I also viewed. I observed that there was a large cleared area, a quite visible deforested, bulldozed and delineated circular field from within the heavily forested canopy in the area comprising most of the property. In this area, there were what I believe based on my training and experience to be numerous marijuana plants, several large water/nutrient tanks near what appeared in my training and experience to be pump and irrigation equipment as well as two large greenhouses/hoop house structures covered in opaque plastic. These structures were open at one end, and I could see from the aerial surveillance what I believe be additional marijuana plants. I have commonly encountered these exact same structures and items at various seized marijuana growing operations. I also observed that just south of this large clearing and along the dirt road leading into the area, there were at least two residential campers next to at least one large metal shipping/storage container and another adjacent greenhouse/hoop house structure believed to contain plants as well. I observed that MOSHE's white Acura MDX parked in the area by the campers, cargo containers, and additional greenhouses.

35. Based upon the foregoing, I believe that MOSHE is currently using his cellular telephone 510-388-7026 and his white 2019 Acura MDX, California license

8HSH975, to facilitate his ongoing drug trafficking activities. I also believe that he is using contiguous Nevada County Parcels APN#034-030-022, APN#034-030-026 and APN#034-030-027 as a location to reside and to operate an ongoing marijuana cultivation operation and to store evidence of his ongoing LSD and MDMA, as it appears per the recent phone locator information and surveillance that he is regularly on this property.

*Training and Experience Regarding Drug Trafficking and Drug Traffickers*

36. As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions. Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators. These records may be kept on paper or contained in memory calculators or computers. It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control. It is my training and experience, that in the case of drug dealers, evidence is likely to be found where the dealers live. It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time.

37. Based upon my experience and training, I have learned that drug traffickers often place their assets in names other than their own to avoid detection of those assets by law enforcement and the Internal Revenue Service (IRS); that those persons are commonly family members, friends, and associates who accept title of assets to avoid discovery and detection; that traffickers also often place assets in the ownership of corporate entities to avoid detection by law enforcement agencies and although these assets are in other individual(s) or corporate names, the traffickers continue to use these assets and exercise dominion and control over them. Typically traffickers keep records of those registrations and transactions in their residence.

38. I have learned that large-scale drug traffickers often have on hand large amounts of United States currency in order to maintain and finance their ongoing business. It has been my experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles and other items of value and/or proceeds of drug transactions, including evidence of financial transactions related to obtaining, transferring, secreting or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances in their residence or in the areas under their control.

39. In my experience, traffickers commonly have in their possession, that is, on their person, at their residence and in the areas under their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Such firearms are used by drug violators to protect their illicit drug trafficking operations, and themselves against law enforcement and other drug violators because the illicit drug trade is an inherently dangerous illegal activity

involving large amounts of valuable contraband and drug proceeds. Such property may include, but is not limited to, narcotics and other dangerous drugs, jewelry, narcotic paraphernalia, books, records, ledgers and quantities of currency.

40. In my experience, traffickers commonly have in their possession, that is on their person, at their residences, and their vehicles, and in the areas under their control and which they have free and ready access to, drugs, including but not limited to in this case, LSD, MDMA and Marijuana, which they intend to distribute. It is my experience that these drug traffickers commonly use these areas (vehicles, residences, properties, etc.) as locations to conceal their narcotics from law enforcement.

41. In my experience, drug traffickers may take or cause to be taken, photographs or videotapes of themselves, their associates, their property, and their product. Such traffickers often maintain photographs and/or videotapes at their residence or in the areas under their control.

42. In my experience, large scale traffickers often maintain in their possession and at their residence fictitious identification, including but not limited to, driver's licenses, employment cards, insurance cards, social security cards, certificates of birth and passports which are obtained by the traffickers and utilized in an effort to prevent law enforcement identification of the traffickers and their drug trafficking activities.

43. In my experience, drug traffickers often use vehicles in which to transport and distribute controlled substances in facilitation of their trafficking activities. It has also been my experience that traffickers will also utilize vehicles as locations in which to store controlled substances prior to distribution. During prior investigations, I have observed that drug traffickers will often utilize vehicles registered in the names of individuals other than themselves in an effort to avoid detection by law enforcement.

44. In addition, these traffickers tend to attempt to legitimize their assets by establishing domestic and foreign businesses, by creating shell corporations, by using bank haven countries and attorneys specializing in drafting and establishing such entities employed to "launder" the proceeds derived from the distribution of controlled substances.

45. In establishing these entities, the traffickers often must travel to meetings in foreign countries as well as domestically. As a result of that travel, records are generated reflecting travel by commercial and private aircraft, Commercial Ocean and private vessels as well as common carrier(s).

46. Individuals involved in the distribution of LSD, MDMA and Marijuana often make, or cause to be made, pictures, videos, movies, compact discs, floppy discs, or other such items which are or contain photographic or digital images in order to memorialize their LSD, MDMA and Marijuana distribution, use, possession, or any other activities surrounding their LSD, MDMA and Marijuana trafficking activities,

and that such items often identify co-conspirators in their LSD, MDMA and Marijuana trafficking activities.

47. It has been my experience in the past, that when suspects use mobile telephones to communicate with cooperating individuals or undercover agents to set up the LSD, MDMA and Marijuana deals, records relating to these activities will be found stored in the cellular telephone. And, as relevant to this case, the drug traffickers in this case have made extensive use of text messaging to communicate about his ongoing drug trafficking.

48. I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

49. As described above and in **Attachment A**, this Affidavit seeks permission to search and seize things that are related to the ongoing LSD, MDMA and Marijuana distribution activities by MOSHE, in whatever form such things are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

50. It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the

items listed in **Attachment B** are items most often associated with the distribution of controlled substances, including LSD, MDMA, and Marijuana as well as the proceeds from such illegal operations.

51. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of this investigation. This Affidavit is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but, instead, are facts that I believe support a finding of probable cause to search the requested locations.

52. Based on my experience and training, and after consulting with other law enforcement officers experienced in drug investigations, I know that individuals involved in drug dealing often maintain at their residences, vehicles, and their persons the items described in **Attachment B**. Individuals involved in drug dealing also often maintain paraphernalia for packaging, weighing, cutting, testing, distributing, and identifying controlled substances. Therefore, I am requesting authority to seize all the items listed in **Attachment B** to this Affidavit and incorporated here by reference.

## Conclusion

53. The facts set forth in this Affidavit demonstrate probable cause to believe that the locations listed in **Attachment A** to this Affidavit contain evidence of **Elan Efraim MOSHE's and his co-conspirators's** ongoing efforts to distribute and possess with intent to distribute LSD, MDMA and Marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1).

54. I therefore respectfully request authority to search:

    A. The person of Elan Efraim MOSHE;

    B. A green IPhone 11 Pro Max with call number (510)388-7026;

    C. The white 2019 ACURA MDX, CALIFORNIA LICENSE #8HSH975;

    D. Nevada County Parcels corresponding to APN#034-030-022 (13.9 acres), APN#034-030-026 (15.5 acres) and APN#034-030-027 (15.4 acres), and all structures on those properties.

55. I further request that based upon this Affidavit, a Criminal Complaint and arrest warrant be issued for **Elan Efraim MOSHE**, charging him with distribution and possession with intent to distribute LSD, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).

56. Finally, I respectfully request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, search warrant, arrest warrant, and Criminal Complaint. I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into criminal activities by the defendant and his coconspirators. Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants over the internet, and disseminate them to other criminals as they deem appropriate, *i.e.*, post them publicly online. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness, as well as endanger the safety of agents serving the warrant requested.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

/s/
Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me telephonically on the __25th__ day of June 2021

*[signature: Carolyn K. Delaney]*
CAROLYN K. DELANEY
United States Magistrate Judge

Approved as to form:

*[signature: Cameron Desmond]*

Cameron L. Desmond
Assistant U.S. Attorney

# Attachment A
## Locations to be Searched

A.   The person of Elan Efraim MOSHE;

B.   A green IPhone 11 Pro Max with call number (510)388-7026;

C.   The white 2019 ACURA MDX, CALIFORNIA LICENSE #8HSH975; and

D.   Nevada County Parcels corresponding to APN#034-030-022 (13.9 acres), APN#034-030-026 (15.5 acres) and APN#034-030-027 (15.4 acres), located at the end of Kuntz Court in rural Nevada County, to include any and all campers, cargo containers, grow houses, sheds, and other structures on the property. Screenshots of the overflight of the properties are pictured below.





1

## Attachment B
## Items to be Seized

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by MOSHE and his co-conspirators:

- Title 21 U.S.C. Sections 846 and 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute LSD, MDMA and Marijuana

- Title 21 U.S.C. Section 841(a)(1) – Distribution and Possession with Intent to Distribute LSD, MDMA and Marijuana
.

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1. Controlled substances, including LSD, MDMA and Marijuana, or items frequently used to distribute LSD, MDMA and Marijuana, or items containing residue from the distribution of LSD, MDMA and Marijuana; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2. United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase LSD, MDMA and Marijuana, from MOSHE during in this investigation;

3. Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4. Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1);

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected

to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person, including MOSHE;

11. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records; and

12. All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with MOSHE during execution of the warrant. This authority to search such mobile telephones includes the following within each mobile telephone:

    A. Incoming call history;
    B. Outgoing call history;
    C. Missed call history;
    D. Outgoing text messages;
    E. Incoming text messages;
    F. Draft text messages;
    G. Telephone book;
    H. Data screen or file identifying the telephone number associated with the mobile telephone searched;
    I. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
    J. Voicemail;

      K.      User-entered messages (such as to-do lists);
      L.      Photographs; and
      M.     Any passwords used to access the electronic data described above.

13. Marijuana plant samples to be documented, photographed and taken; bulk plant material to be disposed of per this order